IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION


JACK JOSEPH VALVO, III,

        Plaintiff,

        vs.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

        Defendant.

Civil No. 3:12-cv-00477-HZ

OPINION AND ORDER

Lisa R. Porter
KP LAW LLC
16200 S.W. Pacific Hwy., Suite H280
Portland, OR 97224

        Attorney for Plaintiff

David Burdett
SOCIAL SECURITY ADMINISTRATION
Office of General Counsel
701 Fifth Avenue, Suite 2900, M/S 221A
Seattle, WA 98104


PAGE 1 - OPINION AND ORDER

Adrian L. Brown
U.S. ATTORNEY'S OFFICE
District of Oregon
1000 S.W. Third Avenue, Suite 600
Portland, OR 97204

      Attorneys for Defendant

HERNANDEZ, District Judge:

      Plaintiff Jack Joseph Valvo, III ("Plaintiff") seeks judicial review pursuant to 42 U.S.C. §

405(g) of the final decision of the Commissioner of Social Security (the "Commissioner")

denying his application for Disability Insurance Benefits ("DIB") and Supplemental Security

Income ("SSI") under Titles II and XVI of the Social Security Act (the "Act").  For the reasons

set forth below, the Commissioner's decision is AFFIRMED.

## PROCEDURAL BACKGROUND

      On September 4, 2008, Plaintiff filed for DIB and SSI, alleging a disability onset date of

August 1, 2005.  R. 161-172.  Plaintiff's applications were denied and he requested a hearing

before an administrative law judge ("ALJ").  R. 114.  A hearing was held on December 1, 2010,

before ALJ Steve Lynch, at which Plaintiff appeared with counsel and testified.  R. 47-95.  A

vocational expert ("VE") and Plaintiff's mother also testified at the hearing.  Id.  On December

7, 2010, the ALJ issued an unfavorable decision, finding Plaintiff not disabled.  R. 26-35.

Plaintiff filed a request for review of the ALJ's decision with the Appeals Council on December

29, 2010.  R. 20.  The Appeals Council denied Plaintiff's request, leaving the ALJ's decision to

stand as the Commissioner's final decision.  R. 1-3.

PAGE 2 - OPINION AND ORDER

**FACTUAL BACKGROUND**

The parties are familiar with the medical and other evidence of the record.  Therefore, the evidence will not be repeated here except as necessary to explain my decision.

**SEQUENTIAL DISABILITY EVALUATION**

A claimant is disabled if he is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  The Commissioner engages in a sequential evaluation process ranging between one and five steps when determining whether an individual is disabled under the Act.  Bowen v. Yukert, 482 U.S. 137, 140 (1987); see 20 C.F.R. §§ 404.1520(a), 416.920(a).

Step-one requires the ALJ to determine if the claimant is performing substantial gainful activity ("SGA").  20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).  To constitute SGA, the work must be both substantial, which involves significant physical or mental activities, and gainful, which is work done for pay or profit.  20 C.F.R. §§ 404.1572, 416.972.  If the claimant is engaged in SGA, the claimant is not disabled.  20 C.F.R. §§ 404.1520(b), 416.920(b).

At step-two, the ALJ must determine if the claimant has a "severe medically determinable physical and mental impairment" that meets the twelve month duration requirement.  20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  If the claimant does not have such an impairment, he is not disabled.  Id.

At step-three, the ALJ must determine whether the severe impairment, or combination of impairments, meets or equals a "listed" impairment in the regulations.  20 C.F.R. §§

404.1520(a)(4)(iii), 416.920(a)(4)(iii).  If the ALJ determines the impairment, or combination of impairments, equals a listed impairment, then the claimant is presumed disabled.  Id.

If the adjudication proceeds beyond step-three, the ALJ must first evaluate medical and other relevant evidence and determine the claimant's residual functional capacity ("RFC").  The RFC is an assessment of work-related activities the claimant may still perform on a regular basis, despite the limitations imposed by his impairments.  20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).  The ALJ uses this information to determine if the claimant can perform his past relevant work at step-four.  20 C.F.R.  §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).  If the claimant cannot perform his past relevant work, the ALJ must determine if the claimant can perform other work in the national economy at step-five.  20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

The claimant bears the initial burden of establishing disability.  Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999).  If the analysis reaches the fifth step, the burden shifts to the Commissioner to show that jobs within the claimant's RFC exist in the national economy.  Id.  If the Commissioner meets this burden, the claimant is not disabled.  20 C.F.R. §§ 404.1566, 416.966.

## THE ALJ'S FINDINGS

At the first step of the five step sequential evaluation process outlined above, the ALJ found that Plaintiff has not engaged in SGA since August 1, 2005, the alleged onset date.  R. 28, Finding 2.  At step-two, the ALJ found that Plaintiff has the following severe impairments: "adjustment disorder with anxiety and depressed mood, chronic back pain, and degenerative joint disease of the right shoulder."  Id., Finding 3.

PAGE 4 - OPINION AND ORDER

At the third step, the ALJ found that Plaintiff's impairment, or combination of impairments, did not meet or equal the requirements of a listed impairment.  R. 29, Finding 4.

Because Plaintiff did not establish disability at step-three, the ALJ assessed his RFC and found that Plaintiff could perform medium work.  R. 30-33.  Medium work is defined as work that involves "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds."  20 C.F.R. §§ 404.1567(c), 416.967(c).  Frequent is defined by Social Security Rulings ("SSR") as activity "occurring from one-third to two-thirds of the time."  SSR 83-10.  The ALJ stated that Plaintiff could stand and walk six hours total in an eight-hour day, and sit for six hours total in an eight-hour day.  R. 30.  The ALJ further limited Plaintiff to "no more than frequent overhead reaching with the right arm; no work at unprotected heights; no climbing of ladders, ropes, or scaffolds; perform only simple-entry level work; no interaction with the public; and only occasional interaction with co-workers."  R. 30, Finding 5.

At the fourth step, the ALJ found that Plaintiff was unable to perform any past relevant work.  R. 33, Finding 6.  At step-five, the ALJ considered Plaintiff's age, education, work experience, and RFC, and found that "there are jobs that exist in significant numbers in the national economy that the claimant can perform."  R. 34, Finding 10.

## STANDARD OF REVIEW

The Court's review is limited to whether the Commissioner's decision was based on proper legal standards and supported by substantial evidence in the record as a whole.  Copeland v. Bowen, 861 F.2d 536, 538 (9th Cir. 1988) (citing Desrosiers v. Sec'y of Health & Human Servs., 846 F.2d 573, 575-76 (9th Cir. 1988)).  Substantial evidence means more than a mere scintilla of evidence, but less than a preponderance.  Saelee v. Chater, 94 F.3d 520, 521 (9th Cir.

1996) (citing <u>Sorensen v. Weinberger</u>, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975)). "It means

such evidence as a reasonable mind might accept as adequate to support a conclusion."

<u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971) (quoting <u>Consol. Edison Co. of N.Y. v.

N.L.R.B.</u>, 305 U.S. 197, 229 (1938)). The court must consider both evidence that supports and

detracts from the Commissioner's decision, but the decision shall not be overturned even if there

is enough evidence in the record to support a contrary decision. <u>Jones v. Heckler</u>, 760 F.2d 993,

995 (9th Cir. 1985). If substantial evidence supports the administrative findings, or if there is

conflicting evidence supporting a finding of either disability or nondisability, the ALJ's decision

is conclusive, <u>Sprague v. Bowen</u>, 812 F.2d 1226, 1229-30 (9th Cir. 1987), and may be set aside

only if an improper legal standard was applied in weighing the evidence. <u>Burkhart v. Bowen</u>,

856 F.2d 1335, 1338 (9th Cir. 1988).

## DISCUSSION

Plaintiff makes the following assignments of error: (1) the ALJ improperly rejected

Plaintiff's testimony; (2) the ALJ erred in his assessment of plaintiff's irritable bowel limitations

under step-two; (3) the ALJ improperly rejected lay witness testimony; (4) the ALJ's RFC

assessment was improper; and (5) the ALJ's step-five findings are erroneous because the

hypothetical presented to the VE contained an improper RFC. (Pl.'s Opening Br. 20-28.) These

five arguments will be discussed in the order by which they are listed above.

## I.    <u>Plaintiff's Credibility</u>

Plaintiff contends that the ALJ erred in his assessment of Plaintiff's credibility by failing

to articulate clear and convincing reasons. (<u>Id.</u> 20-21.) More specifically, Plaintiff argues that 1)

the ALJ improperly considered the lack of medical record and infrequent trips to the doctor when

assessing Plaintiff's credibility; 2) the ALJ did not apply the SSR 96-7p credibility factors; and 3) the ALJ failed to develop the record to further explore Plaintiff's irritable bowel symptoms. (Id. 20-21.)

### i.      Infrequent Trips to the Doctor

Plaintiff argues that the ALJ erred to the extent that he considered Plaintiff's infrequent trips to the doctor or the lack of medical evidence to discredit Plaintiff's testimony.  (Pl's Opening Br. 22).  This argument, however, is not supported by the record.  The ALJ does not discuss infrequent trips to the doctor or the lack of medical evidence anywhere in his credibility assessment.  The ALJ provides a thorough and lengthy discussion supporting his credibility determination; however, his decision does not indicate that he relied on Plaintiff's infrequent trips to the doctor or the lack of medical evidence.

### ii.      SSR 96-7p Credibility Factors

Plaintiff argues that the ALJ failed to apply the credibility factors required by SSR 96-7p, however does not explain which of the credibility factors the ALJ's assessment lacks. (Plaintiff's Opening Br. 20-24).  Plaintiff also argues that a conclusory statement by the ALJ is insufficient, and that the ALJ must articulate clear and convincing reasons for discrediting Plaintiff's testimony.  (Id.)  This court finds that the ALJ did consider and adequately discuss the SSR 96-7p credibility factors that were relevant to Plaintiff, and provided clear and convincing reasons supporting the credibility determination.

When a claimant has a medically documented impairment that could reasonably be expected to produce some degree of the symptoms complained of, and the record contains no affirmative evidence of malingering, "the ALJ can reject the claimant's testimony about the

severity of . . . symptoms only by offering specific, clear and convincing reasons for doing so." Smolen v. Chater, 80 F.3d 1273, 1281 (9th Cir. 1996) (citation omitted).  Examples of clear and convincing evidence include conflicting medical evidence, inconsistencies either in the claimant's testimony or between his testimony and his conduct, inconsistencies between the claimant's daily activities and his alleged symptoms, a sparse work history, testimony that is vague or less than candid, and testimony from physicians and third parties about the nature, severity, and effect of the symptoms complained of.  Tommasetti v. Astrue, 533 F.3d 1035, 1040 (9th Cir. 2008), Lingenfelter v. Astrue, 504 F.3d 1028, 1040 (9th Cir. 2007), Light v. Social Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997).

A general assertion that a claimant is not credible is insufficient; the ALJ must "state which . . . testimony is not credible and what evidence suggests the complaints are not credible." Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993).  The reasons proffered must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony."  Orteza v. Shalala, 50 F.3d 748, 750 (9th Cir. 1995) (citation omitted).  If, however, the "ALJ's credibility finding is supported by substantial evidence in the record, we may not engage in second-guessing."  Thomas v. Barnhart, 278 F.3d 947, 959 (9th Cir. 2002) (citation omitted).

Social Security Ruling 96-7p lists seven factors that the ALJ must consider in addition to the objective medical evidence when assessing the credibility of an individual's statements: 1) the activities of daily living; 2) the location, duration, frequency, and intensity of the pain; 3) factors that precipitate and aggravate the symptoms; 4) any medication taken by the individual as well as any side-effects; 5) any other treatment the individual undergoes to relieve the pain; 6)

any measures other than treatment the individual uses to relieve pain; and 7) any other factors concerning the individual's functional limitations due to pain. See also 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3).

In this case, the ALJ determined that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms. However, the ALJ also noted that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent" with the ALJ's RFC assessment. R. 31, Finding 5. The ALJ then noted that Plaintiff's physicians had, on several occasions, questioned the validity of Plaintiff's subjective complaints. Id. The ALJ supported his conclusion by referencing Plaintiff's activities of daily living as well as a number of medical reports. R. 32-33.

For example, the ALJ cited a medical report from treating physician Dr. Erik Geissal in which the doctor stated that he was confused by Plaintiff's symptoms and wondered whether "there is some degree of somatization or confabulation here." R. 31, 775. Dr. Geissal explained that Plaintiff often used hyperbole when describing his problems and that he therefore suspected exaggeration. Id. Dr. Geissal further reported that Plaintiff described "his current pain as 9/10 but [did] not display acute distress." Id. Dr. Geisel followed-up with another appointment in April 2007 and found that Plaintiff did not present signs of rheumatoid arthritis. R. 32, 767. Dr. Geissal again noted Plaintiff's tendency for hyperbole. R. 767.

The ALJ also noted the inconsistency between Plaintiff's subjective complaints regarding joint pains and examining orthopedist Dr. Stephen Campbell's report from Plaintiff's medical visit on March 23, 2007, at which Dr. Campbell found no joint abnormalities. R. 31, 769.

PAGE 9 - OPINION AND ORDER

The ALJ further noted the inconsistencies between Plaintiff's alleged limitations and his activities of daily living.  R. 32.  During his hearing, Plaintiff testified to having problems with depression, lack of appetite, inability to concentrate, anxiety, panic attacks that can last all day, and problems with memory.  R. 53-56.  Plaintiff testified that he experienced back pain that restricted standing to less than an hour, walking to less than eight blocks, and sitting to less than an hour.  R. 56-57.  Plaintiff testified that he suffered from irritable bowel syndrome and bladder control that caused him to rush to the bathroom without much warning fifteen times a day, cumulatively totaling approximately two hours of an eight hour work day.  R. 58-60.  Plaintiff alleged problems with his neck, which restrict his ability to turn his head.  R. 60-61.  Plaintiff testified to experiencing dizzy spells that occurred eight or more times a day and can last ten to fifteen minutes each occurrence.  R. 62.  Plaintiff also testified that he experienced involuntary muscle spasms daily that caused him to drop objects or trip over his legs.  R. 64.

The ALJ appropriately noted that Plaintiff's symptoms are inconsistent with Plaintiff's reported daily activities.  R. 32.  During the same hearing, Plaintiff testified that he performed the household chores such as laundry and shopping on his own.  R. 68.  On December 12, 2008, consulting psychologist Dr. Marc Stuckey reported that Plaintiff was able to cook using a stove, oven, microwave, and recipes.  R. 790.  At that time, Plaintiff also reported to Dr. Stuckey that his household chores included tending to his dog and cat, assisting his mother with physical disabilities by retrieving items for her, and doing the laundry and the dishes.  Id.  In September of 2009, Dr. Stuckey reported that Plaintiff was able to use public transportation, use a telephone, attend to his personal hygiene, and shop independently.  R. 841-842.  Again, Plaintiff's household chores included caring for pets, doing laundry, washing dishes, and

occasionally scrubbing the bathroom.  Id.  Plaintiff's hobbies included writing a book about traveling, working on a computer, and making jewelry and leather goods.  Id.  The ALJ additionally noted that in March of 2007, Dr. Geissal reported that Plaintiff "had traveled throughout the country – by foot – over the previous six years.  [Plaintiff] was wearing a 200-pound backpack during his travels, and he developed shoulder and neck pain.  [Plaintiff] is writing a book about his experience."  R. 32, 772.

The ALJ properly identified further inconsistencies between Plaintiff's subjective complaints and medical opinions in reports by examining physicians Donald Ramsthel and Terri Robinson.  R. 32.  In December 2008, Plaintiff met with Dr. Ramsthel and reported back pain, numbing in his arm, dizziness with standing, and migraine-type headaches.  R. 782-83.  Dr. Ramsthel could find no physical indicia that would limit Plaintiff's standing, walking, or sitting.  R. 32, 785.  Dr. Ramsthel described Plaintiff as "healthy and normal" aside from some muscle tenderness and discomfort.  Id.  In August 2009, Dr. Robinson followed-up with a consultative exam.  R. 834-838.  During this exam, Plaintiff complained of whole body pain that limited his ability to walk, lift, and sit.  Id. at 834.  However, Dr. Robinson concluded that Plaintiff was able to stand, walk, and sit without any restrictions, he could lift weight without limitation, and found no postural, manipulative, or environmental limitations.  Id. at 837.

Next, the ALJ discussed the inconsistencies that appear in reports by consulting psychologist, Dr. Stuckey.  R. 32.  Dr. Stuckey evaluated Plaintiff on two separate occasions: December 9, 2008 and September 11, 2009.  R. 790-93, 841-43.  During the first visit, Plaintiff listed his anxiety and depression as above a five on a scale of one-to-ten, with ten representing severe anxiety or depression.  R. 32, 792.  Dr. Stuckey observed that Plaintiff's self-reports

"appeared to be inflated and inconsistent with his affective presentation and mood." Id. Dr. Stuckey also recommended further testing to rule out characterological diagnoses and malingering. R. 32, 793. Overall, Dr. Stuckey determined that Plaintiff falls within the normal functioning range. R. 32, 792. Nine months later at Plaintiff's second appointment with Dr. Stuckey, Plaintiff listed his depression as a six or seven, and his anxiety an eight, on a scale of one-to-ten. R. 32, 842. Dr. Stuckey again observed that Plaintiff's assessment was "inflated and inconsistent with his affective presentation and mood." Id. Dr. Stuckey reiterated the need for additional testing to rule out malingering. R. 843.

Moreover, during his September 2009 appointment with Dr. Stuckey, Plaintiff reported that his last panic attack occurred in April 2008, a year and a half earlier. R. 32, 842. However, the ALJ observed that when Plaintiff testified at his social security hearing on December 1, 2010, he stated that he had panic attacks as often as every day, with the fewest being five or six times in one month. R. 32, 55.

The foregoing discussion reveals that the ALJ identified ample specific evidence in the record that undermines Plaintiff's subjective testimony. Plaintiff argues that the ALJ failed to apply the credibility factors required by SSR 96-7p. (Plaintiff's Opening Br. 20-24). Based on this Court's review of the ALJ's credibility assessment, and as revealed by the foregoing discussion, the ALJ did consider and adequately discuss the SSR 96-7p credibility factors that were relevant to Plaintiff. The ALJ provided clear and convincing reasons to reject Plaintiff's statements regarding the extent of his limitations, including conflicting statements by Plaintiff, inconsistencies between Plaintiff's alleged symptoms and his daily activities, testimony from physicians about the inconsistencies between Plaintiff's alleged symptoms and the results of his

physical examinations, and testimony from physicians about Plaintiff's tendency for exaggeration and hyperbole.  R. 28-33.  The ALJ's credibility finding is sustained.

### iii.    **Duty to Develop the Record**

In the alternative, Plaintiff argues that the ALJ failed to develop the record with regard to his irritable bowel syndrome.  (Pl.'s Opening Br. 21-22.)  Claimant bears the burden of proving the existence of an impairment at step-two.  Marci v. Chater, 93 F.3d 540, 543-45 (9th Cir. 1996); see also 42 U.S.C. § 423(d)(5).  Yet, in certain limited circumstances, the ALJ has an independent duty to develop the record.  Higbee v. Sullivan, 975 F.2d 558, 561 (9th Cir. 1992).  However, the ALJ's "duty to develop the record further is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence."  Mayes v. Massanari, 276 F.3d 453, 459-460 (9th Cir. 2001); see also Webb v. Barnhart, 433 F.3d 683, 687 (9th Cir. 2005).  The ALJ is required to seek additional evidence only if the evidence already present consistently favors the claimant.  Lewis v. Apfel, 236 F.3d 503, 514-15 (9th Cir. 2001) (discussing 20 C.F.R. § 404.1527(c)(3)).

In this case, neither the ALJ nor any medical source found the record to be ambiguous or insufficient for proper evaluation.  Plaintiff complains of bowel trouble in 2006, but fails to seek treatment at any date thereafter for this alleged impairment.  R. 754-55.  Plaintiff's failure to seek treatment does not equate to an inadequacy or ambiguity in the record.  Because the existing evidence is neither ambiguous nor insufficient, and does not consistently favor Plaintiff, the ALJ's duty to more fully develop the record was not triggered.  Furthermore, this Court does not see what could be gained by referring Plaintiff for further evaluation of his irritable bowel

syndrome when the evaluation would depend in part on his subjective report to a doctor, and the ALJ has correctly concluded that he is not credible.

## II.   __Step-Two Findings__

Plaintiff also asserts that the ALJ erred by determining that his irritable bowel syndrome was a non-severe impairment at step-two.  (Pl.'s Opening Br. 21.)  Step-two is a screening inquiry intended to identify claimants whose medical impairments are so slight that it is unlikely they would be found disabled.  Bowen, 482 U.S. at 153-154.  At this step, the ALJ must consider the combined effect of all the claimant's impairments on his ability to function, regardless of whether each alone is sufficiently severe.  Howard ex rel. Wolff v. Barnhart, 341 F.3d 1006, 1012 (9th Cir. 2003); Smolen, 80 F.3d at 1290; see also 42 U.S.C. § 423(d)(2)(B); 20 C.F.R. §§ 404.1523, 416.923.  "[A]n impairment or combination of impairments is not severe if it does not significantly limit [the claimant's] physical or mental ability to do basic work activities."  20 C.F.R. §§ 404.1521(a), 416.921(a).

In this case, the ALJ found that Plaintiff had several severe impairments at step-two, listing "adjustment disorder with anxiety and depressed mood, chronic back pain, and degenerative joint disease of the right shoulder."  R. 28.  Therefore, if the ALJ did err in failing to include Plaintiff's irritable bowel syndrome as a severe impairment at step-two, such an error is harmless.  The ALJ's finding that Plaintiff suffered from other severe impairments resolves step-two in Plaintiff's favor, and renders inconsequential the ALJ's finding that Plaintiff's bowel problem was a non-severe impairment.  See, e.g., Burch v. Barnhart, 400 F.3d 676, 682 (9th Cir. 2005) (finding that the ALJ's failure to include an impairment as severe, when the ALJ found

PAGE 14 - OPINION AND ORDER

other severe impairments, was harmless error).  Therefore, the ALJ's step-two findings are upheld.

**III.    <u>Lay Witness Testimony</u>**

Plaintiff argues that the ALJ failed to give proper weight to the testimony of his mother, Elizabeth Thygesen.  (Pl.'s Opening Br. 24-26.)  Lay testimony as to a claimant's symptoms is competent evidence that the ALJ must consider.  <u>Dodrill,</u> 12 F.3d at 919.  If the ALJ expressly decides to disregard such testimony, the ALJ "must give reasons that are germane to each witness."  <u>Id.</u>  While lay witnesses are not competent to testify to medical diagnoses, they may testify as to a claimant's symptoms or how an impairment affects a claimant's ability to work.  <u>Nguyen v. Chater,</u> 100 F.3d 1462, 1467 (9th Cir. 1996).

In this case, Ms. Thygesen testified at Plaintiff's hearing on December 1, 2010.  R. 75-82.  The ALJ found Ms. Thygesen's testimony credible, but attributed limited value to her statements because she "spent relatively little time around the claimant between the August 2005 alleged onset date and April 2008, when he moved back into her house."  R. 33.  The ALJ also noted that Ms. Thygesen's visual impairment may restrict her ability to observe Plaintiff's symptoms.  <u>Id.</u>

Ms. Thygesen testified that Plaintiff had not lived with her for eight and a half years prior to moving back in with her in April 2008.  R. 81.  Plaintiff argues that, while it is true that he did not live with his mother from the date of his alleged impairment in 2005 to 2008, the ALJ was wrong to assume that Ms. Thygesen spent relatively little time around Plaintiff because the ALJ "did not inquire as to how much she actually saw Plaintiff during this period of time."  (Pl.'s Opening Br. 25.)  However, Plaintiff's argument is not well grounded.  The record does, in fact, support the ALJ's conclusion that Plaintiff spent relatively little time around his mother prior to

moving back in with her in 2008.  In March 2007, Dr. Geissal reported that Plaintiff "has been travelling on foot around the country for the last six years, writing a book . . . carried 200 lbs. on his back every day."  R. 772.  Therefore, the ALJ's conclusion that Plaintiff spent relatively little time with his mother between his alleged onset date and the date he moved back in with her in 2008 is supported by the record.

Ms. Thygesen also testified that she was legally blind due to a degenerative retinal disease, but that she is still able to observe Plaintiff when he is near her.  R. 78.  Therefore, the ALJ's conclusion that Ms. Thygesen's visual impairment may restrict her ability to observe Plaintiff's symptoms is also supported by the record.  R. 33, 78.

Accordingly, the Court finds that the reasons provided by the ALJ are germane to Ms. Thygesen and are supported by substantial evidence in the record.  Therefore, the ALJ's decision regarding the lay testimony is upheld.

## IV.   **Improper RFC Assessment**

Plaintiff challenges the ALJ's RFC determination by arguing that: 1) it does not contain a discussion of Plaintiff's ability to work on a regular and continuing basis; 2) limitations for his mild difficulties with concentration, persistence, and pace were not incorporated; 3) it was erroneous due to the ALJ improperly rejecting Plaintiff's testimony and that of his mother; and 4) it failed to include a "Mental RFC."  (Pl.'s Opening Br. 26-28.)

### i.   **ALJ's Compliance with SSR 96-8p**

Plaintiff challenges the ALJ's RFC determination, arguing that it does not contain a discussion of Plaintiff's abilities to work on a regular and continuing basis, as required by SSR 96-8p.  (Pl.'s Opening Br. 26-27.)  Residual functional capacity is defined under the Social

Security Regulations as "the maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of the job." 20 C.F.R. 404 Subpt. P, App. 2 § 404.1512(a). Pursuant to SSR 96-8p, the ALJ's RFC assessment must include a discussion of the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis. Social Security Ruling 96-8p further states that "a 'regular and continuing basis' means [eight] hours a day, for [five] days a week, or an equivalent work schedule."

In this case, the ALJ found that Plaintiff has the RFC to perform medium work, except Plaintiff is able to "stand and walk six hours total in an eight-hour day; sit six hours total in an eight-hour day; lift and carry 50 pounds occasionally and 25 pounds frequently." R. 30. The ALJ further restricted Plaintiff's overhead reaching and precluded work done at unprotected heights. Id. The ALJ concluded that Plaintiff is able to perform only simple, entry-level work with "no interaction with the public and only occasional interaction with co-workers." Id.

While the ALJ did discuss Plaintiff's ability to work for an eight-hour day, he did not expressly state that such work could be done five days a week. Id. However, such a work schedule can be surmised by the ALJ's lengthy and comprehensive RFC discussion. See, eg. Perez v. Barnhart, 415 F.3d 457, 465-66 (5th Cir. 2005) (an ALJ is not required to make a specific finding regarding the claimant's ability to maintain employment in every case; the "claimant's ability to maintain employment is subsumed in the RFC determination"). Furthermore, the ALJ is not required to make an explicit finding because SSR 96-8p "essentially announces an understanding of the term 'regular and continuing basis' consistent with the ALJ's findings." See Montalvo v. Astrue, 237 Fed. App'x 259, 262 (9th Cir. 2007). Therefore,

PAGE 17 - OPINION AND ORDER

Plaintiff's ability to work on a "regular and continuous basis" was adequately discussed by the ALJ, as required by SSR 96-8p, and is supported by substantial evidence in the record.

### ii.    Plaintiff's Mild Difficulties with Concentration, Persistence, and Pace

Plaintiff argues that the ALJ's "findings that reduced concentration abilities and unproductivity are addressed by precluding skilled work, is contrary to case law." (Pl.'s Opening Br. 27.)  During his step-three analysis, the ALJ performed a "paragraph B" analysis to determine whether Plaintiff's mental impairment meets or equals the requirements of a listed impairment under 20 C.F.R. Part 404, subpart P, app. 1.  R. 29, Finding 4.  Pursuant to this analysis, the ALJ determined that Plaintiff had "mild difficulties" with regard to concentration, persistence and pace.  R. 30.

The terms used in the "paragraph B" analysis and in the psychiatric review technique form do not indicate degrees of limitation that must be expressly reflected in the RFC assessment.  Bagby v. Astrue, 2012 WL 1114298, *10 (D.Or. Feb. 7, 2012), adopted by 2012 WL 1114288 (citing Hoopai v. Astrue, 499 F.3d 1071, 1077 (9th Cir. 2007)).  Instead, the ALJ must consider the origin of the opinion that a claimant has a mild degree of limitation and incorporate those underlying functional limitations into the RFC.  See Stubbs-Danielson v. Astrue, 539 F.3d 1169, 1174 (9th Cir. 2008) ("The ALJ translated [the claimant's] condition, including pace and mental limitations, into the only concrete restrictions available to him.")

Here, the reports written by Dr. Stuckey, Natalia Tommassi, and the psychiatric review technique form completed by Dr. Aroon Suansilppongse contain very few limitations caused by Plaintiff's mental impairment.  R. 790-93, 810-23, 841-843, 852-859.  Dr. Stuckey reported that Plaintiff struggles interacting with people in the private sector.  R. 790, 841.  The ALJ gave

weight to Ms. Tommassi's report from Plaintiff's treatment at Lifeworks Northwest, in which

she gave Plaintiff a global assessment functioning score ("GAF") of 55, which indicates

"moderate symptoms or difficulty in social, occupational, or school functioning."  R. 33, 853.

As noted by Dr. Suansilppongse, the bulk of the evidence in the record is related to Plaintiff's

physical impairments and treatment.  R. 822.  "There is no evidence of significant thought

disorder or cognitive deficits." Id.  Accordingly, Dr. Suansilppongse concludes that Plaintiff's

psychiatric impairment is non-severe.  Id.

There is no other indication as to how Plaintiff's limitations in concentration, persistence,

and pace are not accounted for by a restriction within the RFC to "simple, entry-level work; no

interaction with the public; and only occasional interaction with co-workers."  R. 30.  As such,

based on the record, the ALJ's RFC determination that Plaintiff is able to perform "medium

work," with the stated restrictions, is not an unreasonable interpretation of the evidence and,

thus, should be sustained.

### iii.    Plaintiff and Lay Witness Testimony

Next, Plaintiff asserts that the RFC assessment is flawed because the ALJ erroneously

assigned limited weight to Plaintiff's testimony and lay witness testimony.  (Pl.'s Opening Br.

27.)  In determining the RFC, the ALJ must consider all the limitations, severe and non-severe,

that are supported by substantial evidence in the record.  See Orn v. Astrue, 495 F.3d 625 (9th

Cir. 2007).  As discussed above, the ALJ discredited Plaintiff's testimony and assigned limited

weight to Ms. Thygesen's testimony.  Therefore, the limitations described by Plaintiff and Ms.

Thygeson were not supported by substantial evidence.  Because Plaintiff fails to establish that

the ALJ erroneously omitted limitations from his RFC, he has not established that the RFC was flawed.

### iv.    **Mental RFC**

Plaintiff also argues that "the ALJ failed to formulate a Mental RFC." (Pl.'s Opening Br. 28.) However, Plaintiff fails to explain what he means by the term "Mental RFC." This Court is not aware of, nor does Plaintiff cite to, any authority requiring that the ALJ formulate a separate RFC assessing mental impairments alone. In determining the RFC, the ALJ considers both physical and mental limitations imposed by all of claimant's impairments, both severe and non-severe. SSR 96-8p. The ALJ evaluates "all of the relevant medical and other evidence," in making the RFC assessment. Id.; 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). In this case, the ALJ considered and incorporated all of Plaintiff's impairments, including his mental impairments, when making the RFC determination. R. 30-33.

In sum, the ALJ's RFC is based on substantial evidence and is free of legal errors; it is therefore affirmed.

## V.    **Hypothetical Presented to the VE**

Finally, Plaintiff argues that the ALJ's step-five findings are erroneous because the hypothetical presented to the VE contained an improper RFC. (Pl.'s Opening Br, 28.) However, as discussed above, the ALJ's RFC determination is supported by substantial evidence in the record, and therefore, his step-five findings are proper.

## CONCLUSION

Based on the foregoing reasons, the Commissioner's decision that Plaintiff is not disabled is based on substantial evidence in the record and correct legal principles; therefore the Commissioner's decision is AFFIRMED and this case is DISMISSED.

IT IS SO ORDERED.

Dated this _____ day of _____ 2013.

MARCO A. HERNANDEZ
United States District Judge

PAGE 21 - OPINION AND ORDER